UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DONALD WOJCIECHOWSKI,

               Plaintiff,

-vs-                                           Case No. 6:04-cv-1001-Orl-JGG

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.

_____/

## MEMORANDUM OF DECISION

Plaintiff Donald Wojciechowski ["Wojciechowski"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] partially denying his application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint). For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

**I.**     **PROCEDURAL HISTORY**

On January 9, 2001 Wojciechowski filed a claim for disability insurance benefits and supplemental security income benefits, claiming disability as of September 5, 2000. R. 62 - 64. On October 21, 2002, the Honorable Jack F. Ostrander, Administrative Law Judge ["ALJ"], held a 40-minute hearing on Wojciechowski's claim in Anniston, Alabama. R. 398 - 425. Attorney Gloria Green represented Wojciechowski at the hearing. R. 400. The ALJ heard testimony by Wojciechowski and by Norma Jill Jacobson, an impartial Vocational Expert ["VE"].

-1-

On March 6, 2003, the ALJ issued a partially favorable decision.  R. 27.  Following a review of the medical and other record evidence, the ALJ found that as of September 5, 2000, Wojciechowski's limited Residual Functional Capacity ["RFC"] precluded him from performing any work, including his past relevant work as a truck driver, web saw operator, construction laborer, garbage truck driver, and fork lift operator.  R. 25, Findings 5 and 6.  However, the ALJ found that as of September 5, 2001, although Wojciechowski still could not perform any of his past relevant work, his RFC had improved to the point where he could perform the full range of the physical exertional requirements of sedentary work reduced by additional limitations.  R. 26, Findings 5 and 7.  After soliciting testimony from a vocational expert, the ALJ concluded that, as of September 5, 2001, a claimant of Wojciechowski's age, educational background, work experience and RFC could adjust to work that existed in significant numbers in the national economy, such as order taker, cashier, information clerk and bench worker.  R. 25 - 26, Finding 11.  The ALJ therefore concluded that Wojciechowski was entitled to a period of disability and disability insurance benefits between September 5, 2000 and September 5, 2001, but not thereafter. R. 27.

On April 30, 2004, after considering additional medical evidence submitted by Wojciechowski — medical records from Wuesthoff Hospital for the period from September 2003 to November 2003, R. 10 — the Appeals Council denied review.  R. 7.  On July 2, 2004, Wojciechowski timely appealed the Appeals Council's decision to deny review to the United States District Court.  Docket No. 1.  On December 14, 2004, Wojciechowski filed a memorandum of law in support of his appeal of the denial of review.  Docket No. 10.  On

-2-

February 14, 2005, the Commissioner filed a memorandum in support of her decision that Wojciechowski was not disabled.  Docket No. 12.  The appeal is ripe for determination.

## II.   THE PARTIES' POSITIONS

Wojciechowski assigns three errors to the Commissioner.  First, he claims that the Commissioner erred in discrediting his subjective testimony without sufficient basis.  Docket No. 10 at 4 - 12. Second, he claims that the Commissioner erred by failing to find him disabled despite VE testimony that a person suffering the limitations described in his own testimony could not perform any jobs.  Docket No. 10 at 12 - 13.  Third, Wojciechowski claims that the Commissioner erred in failing to pose hypothetical questions to the VE that accurately reflected his overall physical and mental impairments.  Docket No. 10 at 13 - 17.

The Commissioner argues that substantial evidence supports her decision to deny disability.  First, the Commissioner argues that the ALJ properly discounted Wojciechowski's subjective testimony, because it was not supported by the medical record and was inconsistent with the opinion of his treating physician.  Docket No. 12 at 9 - 10.  Second, the Commissioner argues that the questions posed to the VE accurately reflected his impairments.  Docket No. 12 at 14.

## III.   THE STANDARD OF REVIEW

### A.   Affirmance

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant

-3-

evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

**B.    Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the

-4-

decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996). To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir.

1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405 (g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92;  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also Keeton v. Dept. of Health and Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095.  With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095.  The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1]  *Id.*

---

[1]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and

(continued...)

### C.    Standard of Review for Evidence Evaluated by Appeals Council

After the ALJ's decision — but before the Appeals Council decision — Wojciechowski submitted additional medical records covering from September 2003 to November 2003.  R. 10.  The Appeals Council properly made them a part of the record, and also considered them in denying review.  R. 10, 7 - 9.  The district court also must consider the new evidence in determining whether the Commissioner erred in denying review of the ALJ's decision.

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g).  Where a claimant exhausts his administrative remedies by requesting review by the Appeals Council and the Appeals Council then denies review,  the Appeals Council's order denying review is a "final decision" of the Commissioner under § 405 (g).  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2083 (2000); *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Appeals Council "will" review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law, or if the ALJ's action, findings, or conclusions are not supported by substantial evidence.  20 C.F.R. § 416.1470; *Sims*, 120 S.Ct. at 2086; *see also, Parker v. Bowen*, 788 F.2d 1512, 1518 (11th Cir. 1986) (en banc).  The Appeals Council's denial of review is subject to judicial review to determine if it is supported by substantial evidence. *Sims*, 120 S.Ct. at 2086.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's  review is similarly broad.  *Sims v. Apfel*, 530 U.S. 103, 120 S.Ct. 2080, 2085 (2000).  The Appeals Council, not the claimant, has the

---

[1](...continued)

surrounding text.  In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction.  *Id.*  In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court.  *Id.*

primary responsibility for identifying and developing the issues. *Sims*, 120 S.Ct. at 2086. When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § § 404.970 (b); 416.1470 (b); *Sims*, 120 S.Ct. at 2086; *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994). Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence and then denies review. *Keeton*, 21 F.3d at 1066. Similarly, it is *reversible error* for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. *Keeton*, 21 F.3d at 1066.

The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. *Sims*, 120 S.Ct. at 2086; *Falge v. Apfel*, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the *ALJ's decision* is supported by substantial evidence. *Falge*, 150 F.3d at 1323; *accord, Eads v. Secretary of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him). Nevertheless, there is an important difference between *Falge* and this case — a difference stressed by the United States Court of Appeals for the Eleventh Circuit. In *Falge*, the claimant did not appeal the Appeals Council's decision to deny review. Instead he appealed only the *ALJ's decision* to deny benefits. 150 F.3d at 1324. In this case, however, the claimant does expressly appeal and seek a reversal of the Appeals Council's decision to deny review. Docket No. 1 at 4. The Eleventh Circuit directs the district courts to

-8-

consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of

review. *Falge*, 150 F.3d at 1324; *Keeton*, 21 F.3d at 1066; *accord, Higgenbotham v. Barnhart*,

___F.3d ____, 2005 WL 730577 (5th Cir. March 31, 2005).

Indeed, it makes sense that Congress has provided for judicial review of the

Commissioner's final decision — the last step of review necessary to exhaust administrative

remedies. When the Appeals Council refuses to consider new evidence submitted to it, the

Appeals Council's decision denying review is subject to judicial review for error. *Sims*, 120 S.Ct.

at 2086; *Keeton*, 21 F.3d at 1066. Similarly, when the Appeals Council denies review of an ALJ's

decision after receiving, considering, and evaluating new and material evidence that clearly and

thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's

decision denying review also must be subject to judicial review for error. *See Falge*, 150 F.3d at

1324; *Keeton*, 21 F.3d at 1066, 1068; 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the

entire record including the new and material evidence submitted if it relates to the relevant period,

and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary

to the weight of the evidence currently of record). The Commissioner cannot avoid judicial review

of the Appeals Council's decision to deny review by considering but not acting on new evidence

that is highly probative of disability, or by considering but not acting on evidence that shows in

retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence

currently of record.

In this case, the claimant has appealed an unfavorable decision to the Appeals Council as a

necessary step in exhausting administrative remedies. The Appeals Council has considered

claimant's additional evidence in light of the issues raised in the request for review, has considered the applicable statutes and regulations, has considered the ALJ's decision, and has issued a written final decision determining that the ALJ neither erred nor abused his discretion, and determining that the ALJ's findings are supported by substantial evidence.  The Appeals Council's determination is subject to judicial review.  The Commissioner cannot avoid judicial review of the Appeals Council's final decision by passing a regulation defining the term "final decision of the Commissioner of Social Security" in 42 U.S.C. § 405 (g) as the decision of the ALJ, and by calling the Appeals Council's final decision a "denial of review."  *See Sims*, 120 S.Ct. at 2086;  *accord Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (Appeals Council's denial of review was a judicially reviewable final decision under 42 U.S.C. § 405 (g)).

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416 (i), 423 (d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423 (d)(2); 20 C.F.R. §§ 404.1505 - 404.1511.

### A.    Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991);

-10-

*Sabo v. Commissioner of Social Security*, 955 F.Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. §
404.1527 (d). If a treating physician's opinion on the nature and severity of a claimant's
impairments is well-supported by medically acceptable clinical and laboratory diagnostic
techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must
give it controlling weight. 20 C.F.R. § 404.1527 (d)(2). The ALJ may discount a treating
physician's opinion or report regarding an inability to work if it is unsupported by objective
medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted
treating physician's report where the physician was unsure of the accuracy of his findings and
statements).

Where a treating physician has merely made conclusory statements, the ALJ may afford
them such weight as is supported by clinical or laboratory findings and other consistent evidence
of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see
also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion
does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based
on the 1.) length of the treatment relationship and the frequency of examination; 2.) the nature and
extent of the treatment relationship; 3.) the medical evidence supporting the opinion; 4.)
consistency with the record a whole; 5.) specialization in the medical issues at issue; 6.) other
factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d). However, a
treating physician's opinion is generally entitled to more weight than a consulting physician's
opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir.1984); *see also* 20 C.F.R. § 404.1527
(d)(2).

-11-

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527 (e).   The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (*see* 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner.  20 C.F.R. § 404.1527 (e).

### B.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988); *Cowart v. Schweiker*, 662 F.2d 731, 735 - 36 (11th Cir. 1981).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right.  *See* 42 U.S.C.§ 406; *Cowart*, 662 F.2d at 734.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  *See Cowart*, 662 F.2d at 735 - 36.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  *See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995), *citing Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982).  This special duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" and

to be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cowart*, 662 F.2d at 735 (citations omitted).

### C.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; *see also Conley v. Bowmen*, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. § 416.917 (1998).

### D.    The Five Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520 (b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his or her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520 (c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520 (d). Fourth, if a

claimant's impairments do not prevent him or her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520 (e). Fifth, if a claimant's impairments (considering his or her residual functional capacity, age, education, and past work) prevent him or her from doing other work that exists in the national economy, then claimant is disabled. 20 C.F.R. § 404.1520 (f).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423 (d)(2)(B). The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *See id.*, 985 F.2d at 534.

The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The claimant must prove disability on or before the last day of his or her insured status for the purposes of disability benefits. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979); 42 U.S.C. §§ 416 (i)(3); 423(a), (c). If a claimant becomes disabled after the claimant has lost insured status, his or her claim for disability benefits must be denied despite the disability. *See, e. g., Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973); *Chance v. Califano*, 574 F.2d 274 (5th Cir. 1978).

**F.      Other Work**

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Foote*, 67 F.3d at 1558; *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. *Foote,* 67 F.3d at 1558. Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00 (e); *Foote*, 67 F.3d at 1559; *Heckler v. Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walker v. Bowen*, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559; *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir. 1986); *see also MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the

-15-

claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989); *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. 1981). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

## 1.    Pain

Pain is a non-exertional impairment. *Foote*, 67 F.3d at 1559; 826 F.2d at 1003. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1529. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Pain

alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v.*

*Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not,

by itself, conclusive of disability.  42 U.S.C. § 423 (d)(5)(A).

## 2.   Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must

articulate specific and adequate reasons for doing so, or the record must be obvious as to the

credibility finding.  *Foote,* 67 F.3d at 1561-62*; Jones v. Department of Health and Human*

*Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial

evidence).  A reviewing court will not disturb a clearly articulated credibility finding with

substantial supporting evidence in the record.  *See Hale v. Bowman,* 831 F.2d 1007, 1012 (11th

Cir. 1987); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).  As a matter of law, the

failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true.  *Foote,* 67 F.3d at 1561-62*; Cannon v. Bowen*, 858 F.2d 1541, 1545

(11th Cir. 1988).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  *See Smallwood v. Schweiker*, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*

*v. Chater*, 67 F.3d at 1562 (quoting *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.1983)

-17-

(although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

V.      **APPLICATION AND ANALYSIS**

     A.      **The Facts**

Wojciechowski, who was 45 on the date of the administrative decision, has a ninth grade education.  R. 402.  Wojciechowski previously worked as a saw operator, truck driver, mover and construction worker.  R. 403 - 05.  Wojciechowski alleges disability due to an aortic valve replacement and lower back pain radiating into his left leg.  The ALJ concluded that these conditions resulted in a period of disability between Wojciechowski's alleged disability onset date of September 5, 2000, and a subsequent improvement in his medical condition by September 5, 2001.  R. 26, Findings 11 and 12.

     1.      **Medical Condition Preceding Closed Period of Disability**

On February 11, 1999, John L. Harlan, M.D. performed aortic valve replacement surgery on Wojciechowski due to a heart murmur, concentric left ventricular hypertrophy and aortic stenosis with incompetence.  R. 141.  Dr. Harlan discharged Wojciechowski from the hospital on February 15, 1999.  R. 141.  Dr. Harlan re-admitted Wojciechowski on February 25, 1999, due to progressive orthopnea, weakness, fatigue and shortness of breath.  R. 160.  After a pericardial effusion was discovered, Dr. Harlan performed a pericardial drainage without complications.  R. 160.  Wojciechowski was again discharged on February 28, 1999.  R. 160.

On April 18, 2000, Wojciechowski went to Robert Brock, M.D. for followup on his aortic valve surgery.  R. 280.  Dr. Brock observed a normal heart rate and rhythm.  However, he did note

-18-

signs of cervical arthritis with associated left arm pain.  R. 280.  Dr. Brock advised Wojciechowski

to return in three months.  R. 280.  On July 18, 2000, Dr. Brock again noted no signs of cardiac

anomalies.  R. 279.  Dr. Brock found that Wojciechowski's blood pressure was not well controlled

and prescribed medication.  R. 279.  On August 10, 2000, Wojciechowski complained to Dr.

Brock of dizziness and numbness.  R. 278.  After a change in medications, Wojciechowski

reported no further dizziness or syncopal episodes to Dr. Brock on August 29, 2000.  R. 277.

Wojciechowski did report arthritic neck pains, for which Dr. Brock prescribed Lortab.  R. 277.

### 2. Medical Condition During Closed Period of Disability (9/5/00 - 9/5/01)

Sam Bowen, M.D. referred Wojciechowski for epidural steroid blocks on October 13,

2000, and October 27, 2000, in response to complaints of lower back pain radiating into his left

leg.  R. 237 - 40.  Wojciechowski had undergone a lumbar laminectomy in 1991.  R. 237.  After

diagnosing Wojciechowski with a herniated disk at the L4 - 5 vertebrae, Dr. Bowen performed a

posterior lumbar fusion on November 30, 2000.  R. 244 - 46, 248.  Dr. Bowen discharged

Wojciechowski on December 1, 2000, and told him to avoid strenuous activity, as well as bending,

lifting, stooping, straining and driving.  R. 245.

Dr. Bowen noted a reduction in Wojciechowski's complaints of pain on April 3, 2001.  R.

314.  X-rays showed no signs of post-operative movement.  R. 314.  Dr. Bowen informed

Wojciechowski that he was not ready to go back to work.  R. 315.  On June 6, 2001, Dr. Bowen

stated that Wojciechowski's condition had progressively improved, but he still complained of

problems with sitting and standing due to discomfort.  R. 313.  Although Wojciechowski

continued to have an occasional weak feeling in his legs, his overall condition had improved

following surgery.  R. 313.  Dr. Bowen recommended a course of physical therapy and a return to work in three months, though to a less strenuous job than he had previously performed.  R. 313.

On August 6, 2001, Dr. Rebecca Upton, a state agency medical consultant, reviewed the record and concluded that Wojciechowski could lift and carry 20 pounds occasionally, ten pounds frequently, as well as sit, stand or walk for up to six hours in an eight-hour workday.  R. 327.  Dr. Upton also opined that Wojciechowski could frequently climb ramps or stairs; occasionally balance, stoop, kneel, crouch or crawl; and never climb ladders, ropes or scaffolds.  R. 329.  Finally, Dr. Upton believed that Wojciechowski needed to avoid concentrated exposure to extreme heat and cold, vibrations, fumes, odors, dusts, gases and poor ventilation as well as moderate exposure to hazards such as machinery and heights.  R. 331.

### 3.    Medical Condition After Disability Found to Have Ceased (9/5/01)

On September 5, 2001, nine months after the back surgery, Dr. Bowen again reviewed Wojciechowski's condition.  R. 335.  Wojciechowski reported back pain associated with activities, but denied any leg problems or other symptoms.  R. 335.  Dr. Bowen believed that Wojciechowski had likely reached maximum medical improvement, but could not return to his previous work as a saw operator.  R. 335.

> He will be capable of doing work that does not require any prolonged standing any greater than one hour in some type of job that will allow him frequent positional changes.  He can manipulate lighter weight materials.  I think he is able to lift in light category at work, occasional floor to knuckle lift of twenty pounds, occasional knuckle to shoulder lift at twenty pounds and occasional shoulder to overhead lift of ten pounds and carry of five pounds less than fifty feet.  And I would give him a permanent impairment rating related to this injury of 10% whole person impairment.

R. 335.

Wojciechowski testified before the ALJ that he could stand anywhere from thirty-five minutes to an hour at a time.  R. 408.  Similarly, Wojciechowski stated that he could walk for 35 to 40 minutes, and could sit for up to an hour in his recliner before needing to change positions.  R. 408.  Wojciechowski said he lays down two or three times per day for 45 minutes to an hour at a time.  R. 408 - 09.  Wojciechowski also testified that he experienced episodes of dizziness two to three times per day, occurring when he got up too fast.  R. 411.

During the hearing, the ALJ asked Norma Jacobson, a vocational expert [VE], the following:

> Okay.  Let me, let me ask you some hypothetical questions.  Let's assume a hypothetical person of Mr. Wojciechowski's age, education and work experience. And let's assume that this hypothetical person could occasionally lift and carry 10 pounds.  Could frequently lift and carry five pounds.  Could stand and walk for up to four hours in an eight hour day, and sit for up to four hours in an eight hour day. However, this hypothetical person experiences moderate pain, and its moderate affect upon that person's ability to concentrate, and can stand no longer than an hour maximum.  And needs to change position frequently.  This hypothetical person is unable to work around unprotected heights or dangerous or moving equipment.  No ladders, ropes or scaffolds.  Should not have a job that requires push, pulling with the lower extremities.  Can occasionally climb ramps or stairs.  Occasionally balance, stoop and crouch.  Cannot crawl.  Must avoid concentrated exposures to extreme heat and cold, fumes, odors, dust and gasses and poor ventilation.  With these hypothetical limitations, could this hypothetical person return to any of the past work as it was performed by Mr. Wojciechowski, or as that work is normally performed in the national economy?

R. 422 - 23.  The VE testified that such an individual could not perform Wojciechowski's past relevant work, but could perform a significant number of other jobs.  R. 423.  Specifically, the VE stated that these limitations would not prevent work as an order clerk, order taker, cashier or information clerk, for which approximately 16,000 jobs exist in the State of Florida.  R. 423.

**B.**     **The Analysis**

**1.**     **Subjective Testimony and Credibility**

Wojciechowski argues that the ALJ "explicitly rejected [his] capability with no evidentiary

basis for doing so." Docket 10 at 4. He argues that his hearing testimony regarding his pain and

fatigue is extensively corroborated by substantial competent evidence. Docket 10 at 4 - 5.

Wojciechowski points out that he testified before the ALJ that he has to lay down during the day

"at least two or three times a day" for 45 minutes to an hour,[2] R. 408 -09, and said that his

"average pain," which he suffered daily, was "a six to seven — seven, mostly" on a scale of one to

10, R. 411.

Wojciechowski cites specific items of record evidence that he contends support his pain

and fatigue testimony. However, the bulk of the items he cites do not appear to corroborate his

contentions. Wojciechowski offers no explanation as to how they might do so. Wojciechowski

cites the following:  a hospital "Discharge Summary," R. 141, that states that he had undergone

aortic valve replacement; another discharge summary, R. 244, that describes his (apparently

successful) back surgery; a "Joint Petition for Approval of Settlement," R. 79, that describes

Wojciechowski's "disability" (under the Alabama Worker's Compensation statutes) as being

"based upon a 10% whole person impairment"[3]; and another discharge summary, R. 351 - 52, that

describes, *inter alia*, his previous valve replacement and back surgeries, as well as the renal

---

[2]In context, Wojciechowski's testimony suggests that pain, rather than fatigue, is what causes him to lie down during the day, as he does so to relieve back pain.  R. 408 - 09.

[3]This document, entered into by Wojciechowski and a former employer, is a legal pleading rather than a medical record.

angiogram that he had just undergone.  None of these cited items mention fatigue as a concern, and none describe pain that was disproportionate to the surgical procedures he had just undergone or that persisted beyond a reasonable recovery time.  In short, none of these documents could corroborate testimony that Wojciechowski suffered disabling pain or fatigue (or both) after September 5, 2001.

Wojciechowski also notes that the discharge summary from his February 1999 heart-valve replacement, R. 141, indicates that his heart had been permanently damaged prior to the surgery, and that he suffers from left ventricular hypertrophy.  Docket No. 10 at 6.  Though what Wojciechowski says is true, this record does not indicate that he suffered (or could be expected to suffer) any particular level of pain or fatigue in the succeeding months, and it does nothing to undercut the ALJ's findings in regard to his credibility.

Wojciechowski also quotes Dr. Bowen's notes from September 5, 2001 regarding the progress he had made after the November 2000 back surgery.  Docket 10 at 5.  Wojciechowski obviously believes that Dr. Bowen's assessment supports his contention that his pain and fatigue have rendered him unable to work.  However, Dr. Bowen concluded just the opposite, finding *inter alia* that Wojciechowski could "lift in the light category at work," could occasionally lift 20 pounds from floor to knuckle, and from knuckle to shoulder, and could occasionally lift 10 pounds over his head.  R. 335.  Dr. Bowen's report undercuts Wojciechowski's testimony, rather than supporting it.

In finding that Wojciechowski's testimony was "credible, but not fully credible to the extent that he can perform some work at this time," the ALJ noted that his testimony regarding his

-23-

allegedly disabling limitations was inconsistent with his testimony of his ability to drive short distances, his visits to family and friends, and his trips out to eat.  R. 23.  In addition, the ALJ relied on the report of Wojciechowski's treating physician, Dr. Bowen, which he found to be "fully consistent" with the remainder of the medical evidence.  R. 23.  Obviously, the ALJ noted the inconsistency between Dr. Bowen's report and Wojciechowski's testimony, as he explicitly noted that he was giving Wojciechowski "the benefit of the doubt" in finding that he suffered limitations beyond those described in Dr. Bowen's report.  R. 23.  Those limitations were less severe than those described in Wojciechowski's testimony, however.

Thus, Wojciechowski has failed to demonstrate that his subjective complaints have substantial evidentiary support.  In particular, the Court notes that Wojciechowski failed to cite evidence that his pain, fatigue or other subjective complaints remained at disabling levels after the surgeries that were intended to address them — and which apparently succeeded.  In addition, the Court finds that the ALJ articulated sufficient reasons for partially discrediting Wojciechowski's subjective testimony.

### 2.    Hypotheticals posed to the VE

Wojciechowski offers two criticisms of the hypotheticals posed by the ALJ to the VE. First, he notes [Docket 10 at 12] that the VE testified that a person who had to "lie down two to three times a day for up to two or three hours" could not perform any of the jobs that the ALJ found Wojciechowski capable of performing after September 5, 2001.  R. 424.  Thus, he continues, assuming his testimony is credible, he is unable to perform those jobs.  Docket 10 at 13.

However, as noted above, the ALJ found that Wojciechowski's testimony was not entirely

-24-

credible, and articulated sufficient reasons for this finding.  R. 23.  In addition, it appears that this hypothetical overstated even the limitations that Wojciechowski claimed to suffer.  The hypothetical described someone who had to lie down two or three times a day for two or three hours, R. 424, while Wojciechowski testified that he had to lay down two or three times a day for 45 minutes to an hour, R. 408 - 09.  The ALJ was not required to find Wojciechowski disabled on the basis of this hypothetical.

Wojciechowski also contends that the ALJ failed to ask the VE any hypothetical question that accurately reflected his limitations.  Docket No. 10 at 14.  Wojciechowski asserts that the VE "failed to propound hypothetical questions that addressed the impact of pain and fatigue" on his ability to do work-related activities.  Docket No. 10 at 14.  Again, as noted above, the ALJ did not credit Wojciechowski's testimony on this score and he was not required to include such pain and fatigue limitations in his hypotheticals. Beyond this issue, Wojciechowski offers no criticism of the ALJ's hypotheticals, which the Court finds accurately reflected the limitations described by Wojciechowski's treating physician, Dr. Bowen.  R. 335.

Wojciechowski offers one final criticism of the VE's testimony.  Docket 10 at 16.  He complains that the ALJ improperly asked the VE whether she was familiar with the concept of pain as it applied to employment.  R. 423.  When the VE replied affirmatively, the ALJ asked her to elaborate.  The VE stated that "[p]ain that is mild or moderate does not interrupt the ability to do work.  It does interrupt ability to work when it's moderately severe or severe pain.  Because the individual is not able to concentrate.  They're just so consumed by pain that they can't think of anything else."  R. 423 - 24.

Wojciechowski argues that it was improper to allow the VE to testify about pain, rather than about jobs. But this is a mischaracterization. The ALJ was not seeking to have the VE explain "pain" to him. He was simply assuring that in addressing the hypothetical — which involved a person experiencing "moderate pain, with its moderate effect upon that person's ability to concentrate," R. 422 — he and the VE shared a common understanding of the severity of the pain under discussion and its impact on the claimant's ability to work. In this context, the question was not improper.

## VI.   **CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**. The Clerk shall enter a judgment and close the case.

**DONE AND ORDERED** this 14th day of August, 2005.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Deliver Copies of this Order to
All Counsel of Record and to:

Mary Ann Sloan, Chief Counsel
Dennis R. Williams, Deputy Chief Counsel
Paul Jones, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia        30303-8920

Susan Roark Waldron
Assistant United States Attorney
400 N. Tampa St., Suite 3200
Tampa, FL                33602

The Honorable Jack F. Ostrander
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
1910 3rd Avenue, North
Suite 100
Birmingham, AL 35203